## *In re* WABASH R. Co.[1]

*(Circuit Court, W. D. Missouri. June, 1885.)*

RECEIVER—INTERFERENCE OF STRIKERS—CONTEMPT—PUNISHMENT.

A writer, signing himself chairman, sent the following notice to the various foremen of the shops of the Wabash Railway Company during a strike organized to resist a reduction of wages, the railroad being at that time in the hands of a receiver appointed by the United States circuit court:

"OFFICE OF LOCAL COMMITTEE, June 17, 1885.

"——, *Foreman:* You are requested to stay away from the shop until the present difficulty is settled. Your compliance with this will command the protection of the Wabash employes. But in no case are you to consider this an intimidation."

*Held*, that this was an unlawful interference with the management of the road by the receiver, and a contempt of court, for which the writer should be punished.

*Beebe & Randolph,* for the railroad company.
*Hall & Rogers,* for defendants.

KREKEL, J. C. M. Berry and Thomas Selby, employes of the Wabash Railroad, are before me charged with contempt of court in interfering with the management and operation of the road. The special charge is that on the seventeenth day of June, 1885, they took possession of the round-house at Moberly, within this district, and by threats and intimidation caused employes of the company to quit work, and afterwards prevented them from working for the company, thus interfering with the operation of the road. In their return the defendants state that, on the morning of the seventeenth of June, they, with other employes of the road, at the usual hour of the day, went

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

to work, but found a notice posted on the shop doors which reads as follows:

"MOBERLY, MO., June 16, 1885.

"*To Employes:* By authority of the general manager, A. A. Talmadge, I am instructed to close the shops at Moberly indefinitely. I expect further instructions in the matter to-morrow.      W. J. BROKAN, DIV. M. M."

That the defendants thereupon went into the round-house to notify the men there employed of a meeting to be held by the employes that morning at 8 o'clock, and that such of the men as they did not see Mr. Arthur, in charge of the round-house, promised to notify; that they came to and went from the round-house in an orderly manner, and without any threat or intimidation.

The testimony before the court shows that, early in the spring of 1885, a strike was inaugurated in Moberly by the employes of the Wabash Railroad, resisting by force and intimidation a reduction of wages attempted to be made by the managers, in which the strikers accomplished their object, namely, to be reinstated at their former wages. On this occasion the managers of the road, in a circular addressed to Shaw, Coughlin, and Berry, as a committee of the employes, among other things, said:

"That in case it becomes necessary to make further reduction we will give the chairman of your committee three days' notice; and the committee shall decide whether there shall be a reduction of force or of hours worked, or an ·entire suspension of everything, excepting running repairs and inspection."

It appears that afterwards a correspondence regarding reduction of time or wages (it does not appear which) was had between Manager Talmadge and Berry, as chairman of the Moberly committee, in the course of which Berry suggested the reduction of wages of the officers rather than of the employes. Thus matters stood on the sixteenth day of June, when a suspension of the shop-work (not of repairs) was ordered by the managers, and the former strikers, among them these defendants, inaugurated the combination or strike hereinafter spoken of. Three written notices were issued on June 17, 1885, by C. M. Berry, as chairman of the employes, of which the following are copies:

"OFFICE OF LOCAL COMMITTEE, June 17, 1885.

"*S. M. Nugent, For. of Lathes:* You are requested to stay away from the shop until the present difficulty is settled. Your compliance with this will command the protection of the Wabash employes. But in no case are you to consider this an intimidation.

[Signed]                    "C. M. BERRY, Chairman."

"MOBERLY, MO., June.
"OFFICE OF LOCAL COM.

"*To W. P. Sie:* You are requested to stay away from the shops until this matter is settled. By your compliance with this request your action will be sustained by the Wabash employes to the utmost of their power. But in no case are you to consider this an intimidation. Having sent a similar notice to other foremen, the committee consider it wise to give you an opportunity to establish yourself for or against us.      C. M. BERRY, Chairman."

"OFFICE OF LOCAL COMMITTEE, June 17, 1885.

"*Mr. Arthur, Foreman R. H.*—DEAR SIR: All other foremen have been informed that it is our wish that they should remain away from the shops until the present difficulty is settled, but in your case you are justified in remaining while passenger trains are running; but we request you to confine your work to passenger engines only. But in no case are you to consider this an intimidation. C. M. BERRY, Chairman."

The testimony further shows that the men engaged in the round-house on repairs quit work and went to the meeting called by Berry, chairman; and that of the 35 men employed in the round-house, the number who returned to their work at no time exceeded 15,—a number insufficient to carry on the necessary work of repairs. A number of the men who have gone to work swear that they have not been molested or interfered with. One of the locomotive engineers, however, testifies that a notice was given him to quit work, which he refused to obey; that, thereupon, three partially masked men approached him on his engine, and used violent and threatening language. Selby, one of the defendants, testifies that he went to the round-house, at the suggestion of Berry, to notify the men of the meeting. Witnesses differ as to the language used by Berry and Selby, while talking to Arthur in the round-house, about the men attending the meeting, but sufficient can be gathered from it to show that, while they undertook to avoid the law, yet they intended to leave the impression that the round-house employes had better attend the meeting. Upon this (a general outline of the facts) the question arises, ought the defendants to be punished for contempt? It will be recollected that the property of the Wabash Railroad is in the hands of the court, and that receivers have been appointed by it for its management. The owners have been deprived of possession and control, and with it the ability to protect it. The court, through its officers, has undertaken to do the ordinary business of the company, the running of regular, speedy, and safe trains for the conveyance of mails, passengers, and merchandise; and, moreover, the management of the property so as to make it valuable to those who have claims against it. All these great public and private interests demand that no unnecessary interferences with the property and its management should take place. If any one has grievances, be they employes or others, they can have easy and ready redress for their actual or supposed wrongs by bringing them to the attention of the court. Both receivers and managers are subject to its control. The court will not permit its officers to wrong any one, and is always ready to redress grievances. Such a thing as taking the law into their own hands, be they employes of the company or officers of the court, will not be tolerated. Stress has been laid, in the argument for defendants, upon the promise made in the circular issued by the managers during the early strike, that notice should be given to the chairman of the committee of the employes of any intended reduction, and that the committee should be consulted

about any reduction or suspension. These promises, heretofore more fully set out, though not applicable here, were well calculated to mislead, and no doubt had their influence in the proceedings afterwards had by the committee and strikers. The wholesome law of the state of Missouri, requiring companies to give 30 days' notice to employes before reducing their wages, which went into effect on the twenty-third day of June, has no application, because not in force when these occurrences took place. The provisions of this law no doubt emanated from the same sense of justice which induced the promise of the managers to give notice of any reduction, in the circular spoken of. It moreover indicates the true source where the remedy for grievances of the kind under consideration is to be sought. Differences between employers and employes, if not settled by compromise, must be settled by law and the courts. The community at large cannot afford to tolerate conflicts, from which outside and innocent parties must suffer. Courts do not interfere between employer and employes, except to declare what the rights of the parties are, and to keep order. Men may work or cease working as they choose, provided they violate no contract. They may combine and peaceably seek to forward their interest in any manner, provided they do no violence to others' rights, or commit no violation of law.

Did these defendants, by what they did, interfere with the rights of others? The court (in this case) had a right to operate the railroad without molestation of anybody. Indeed, as shown, was bound in law and justice to do so. The defendants, and specially Berry, the recognized leader of the strikers, did interfere in the management of the road. To make this plain, it is only necessary to refer to his notices. What would we say of one signing himself "Chairman" who, in the ordinary transactions of life, would give notice to a foreman in a shop to remain away from his work, and assure him that a compliance with the request would command the protection of a set of men who had combined to resist being discharged from work? What would we say of a man signing himself "Chairman" of an organized body who would write to an employe of a shop to stay away from his work, and that by compliance he would be sustained to the utmost by the body which he represented; that the committee considered it wise to give him an opportunity to establish himself for or against the combination? What would be thought of a man who signs himself "Chairman" of an organized body writing to an employe in a shop that he might remain in it to do a particular kind of work, but to confine himself to work designated by the writer? Such things occurring in ordinary life transactions, no one of common sense would doubt that such acts were an interference. The implied threats contained in the notices would justify the placing of the perpetrators under peace-bonds, and if consequences followed, such as in this case, the perpetrator becomes further amenable to the law. The statement in all of these notices that they are not to be taken as intimidations go to show beyond a

doubt that the writer knew he was violating the law, and by this sub-terfuge sought to escape its penalties. The defendant Selby is shown by the testimony to be an anxious and active helper, who knew very well what he was doing. He kept nearer within the bounds of the law than his co-defendant Berry. In view of the fact that the prom-ises made in the circular of the managers, heretofore spoken of, may have induced the strikers to again try improper and illegal means, the sentence of the court is that Berry be confined for two, and Selby for one, month in the county jail of Jackson county, reserving the right to add to this sentence, if deemed necessary, peace-bonds in the sum of $500 each, to run for one year.